ORLANDO ALFARO, )
)
        Plaintiff, )
)
v. ) **ORDER**
)
UNITED STATES OF AMERICA, et al., )
)
        Defendants. )

Orlando Alfaro ("Alfaro" or "plaintiff"), a federal inmate imprisoned at the Federal Correctional Institution - Medium in Butner, North Carolina ("Butner"), filed this action pursuant Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680 [D.E. 1]. Alfaro alleges a failure to provide him with medical care. Compl. at 9. On July 20, 2010, all defendants filed a motion to dismiss or for summary judgment [D.E. 11]. See Fed. R. Civ. P. 12(b)(1), 12(b)(6), 56. On July 20, 2010, the court notified Alfaro about the motion, the consequences of failing to respond, and the response deadline [D.E. 13]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On August 9, 2010, Alfaro responded in opposition [D.E. 14]. As explained below, the court grants defendants' motion to dismiss.

I.

Initially, Alfaro contends that the motion to dismiss was untimely filed because it was filed more than 60 days after summonses were issued. Mem. Opp. Mot. Dismiss at 6. Although summonses were issued on May 4, 2010, the United States Attorney was not served until May 17, 2010, and the other defendants were not served until June 1, 2010 [D.E. 9, 10]. Therefore, with the

exception of the United States, the motion to dismiss was timely filed. See Fed. R. Civ. P. 12(a)(2)–(3). The United States' motion to dismiss was filed four days late. However, the United States has asserted a meritorious defense and Alfaro has suffered no prejudice. Moreover, public policy strongly prefers that courts decide cases on the merits. Accordingly, the court denies Alfaro's request for entry of default. See, e.g., Colleton Prep. Academy, Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417–21 (4th Cir. 2010).

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50. Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

According to Alfaro's complaint, he "suffered gunshot wounds on June 5, 1999 to his left anterior abdomen and his right flank (outer si[d]e of thigh, hip, buttock)." Compl. at 10 ¶ 6. "From

2

June 5, 1999 to July 29, 1999 Plaintiff was hospitalized in Rochester General Hospital where five (5) operations were performed. After a prolonged Intensive Care Unit (ICU) stay he had several skin grafts, multiple infections and was finally stabilized and discharged with wheelchair and instruction for physical therapy." Id. at 10 ¶ 7. "From the time of the incident through the time of his detention for the judicial process which resulted in his present incarceration, the Plaintiff was in constant treatment for the [e]ffects of his injuries." Id. at 10 ¶ 8. "The diagnosis of the physicians involved prior to his incarceration was that Plaintiff had severe damage to his abdomen, extreme pain, hernias caused by his injuries, extreme depression, difficulty walking[,] the possibility of amputation of left leg (below the knee), severe atrophy of the left lower extremity and contracture of toes on left foot." Id. at 10 ¶ 9.

On April 17, 2005, Alfaro began serving his federal sentence. Id. at 10 ¶ 6. Upon his incarceration, Alfaro was housed at FCI-Coleman, where he received medications for pain control. Id. at 11 ¶ 11. "On September 16, 2005 . . . a contract general surgeon, DR. Christopher Johnson, . . . recommended tertiary care . . . for abdomen wall reconstruction and plastic surgery." Id. at 11 ¶ 12. "Such surgery was not done while at FCI/Coleman and the BOP considered Plaintiff's situation serious enough to transfer him to the Federal Medical Facility in Butner North Carolina [('FMC-Butner')] in June 2006." Id. at 11 ¶ 13. A physician's assistant ("P.A.") evaluated Alfaro at FMC-Butner and "diagnosed [him with] chronic abdominal hernias causing chronic pain and difficulty to walk due to the hernias and left leg problems." Id. at 11 ¶ 14. The P.A. "scheduled Plaintiff to see Dr. Mulcahy, general surgeon wo [sic] see a plastic surgeon due to the extent of tissue destruction. His finding was that Plaintiff would need some form of tissue transfer as well as fascial repair." Id. at 11 ¶ 15. On August 23, 2006, a plastic surgeon examined Alfaro and "stated that Plaintiff needed: Abdominal wall repaired; with skin graft and abdominoplasty." Id. at 11 ¶ 16.

3

"When nothing concrete was transpiring to these recommendations, with Plaintiff continuing to deteriorate (extreme pain, further loss of mobility, and increased hernias) Plaintiff submitted requests to the medical staff in FCI-2/Butner" who "acknowledged the atrophied and contracted left leg of the Plaintiff and the multiple hernias" and "stated that . . . the Utilization Review Committee had denied the surgery stating that in their opinion the risks outweighed the benefits." Id. at 11–12 ¶ 18. "With continuing deterioration of both the left leg and the abdominal hernias Plaintiff again requested surgical treatment and was informed by Dr. Bonner once again that the Utilization Review Committee ruled out the operation as not medically necessary." Id. at 12 ¶ 19.

During this period, medical personnel in the pain clinic at FCC/Butner treated Alfaro. On February 23, 2009, Alfaro had surgery on his foot and toes. Id. at 12 ¶ 23. "Plaintiff had suffered a great deal because of the long delay in this operation." Id. at 12 ¶ 24. Alfaro still had not received any abdominal surgery although he "has constantly requested such operation" and "several outside consultants and well as BOP personnel have strongly recommended such operation." Id. at 12–13 ¶ 25. "Plaintiff lives in constant pain and his hernias keep growing. In addition to the pain such hernias and the damage to the Plaintiff's abdomen have prevented his being able to do adequate physical therapy and to regain his ability to walk. Furthermore, the Plaintiff has been told that there is no medication to treat this condition; that surgery is the only option." Id. at 13 ¶ 26.

II.

Defendants seek dismissal of Alfaro's Bivens claims on various grounds. See Mem. Supp. Mot. Dismiss at 4–12. In response, Alfaro "offers no arguments on the Biven[s] portion of the Defendant's Motion for Dismissal . . . . His answer is totally directed toward the Tort Claim portion of his claim . . . ." Mem. Opp. Mot. Dismiss at 2. Accordingly, the court dismisses Alfaro's Bivens claim.

4

As for the FTCA claim, the court dismisses defendants Stephens, Bonner, and Serrano-Mercado. The only proper defendant in an FTCA claim is the United States. See, e.g., FDIC v. Meyer, 510 U.S. 471, 477 (1994); Jackson v. Kotter, 541 F.3d 688, 693 (7th Cir. 2008); Maron v. United States, 126 F.3d 317, 321–22 (4th Cir. 1997); 28 U.S.C. §1346(b).

As for the FTCA claim against the United States, defendant seeks dismissal of Alfaro's FTCA claim because Alfaro allegedly failed to timely file this action following the BOP's final denial of the claim. Under 28 U.S.C. § 2401(b), "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

Alfaro filed the administrative claim required to commence an FTCA action on March 1, 2008. Compl. at 4. The claim was denied on October 2, 2008. Id. Alfaro mailed his complaint to the court on March 30, 2009, and the court received the complaint on April 1, 2009. See Mem. Opp. Mot. Dismiss, Ex. A at 3 (photocopy of envelope showing postmark and receipt stamp). However, on April 6, 2009, the court returned Alfaro's complaint to him unprocessed without filing it for failure to furnish a sufficient number of copies as required by Local Civil Rule 81.1, EDNC. Mem. Opp. Mot. Dismiss, Ex. A at 2. Alfaro then submitted the appropriate number of copies, and the court filed the complaint on April 16, 2009.

In considering the motion to dismiss, the court provides Alfaro the benefit of the prison "mailbox rule." See, e.g., Houston v. Lack, 487 U.S. 266, 270–76 (1988); Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735–36 (4th Cir. 1991) (per curiam); see also Fed. R. Civ. P. 5(d)(4) ("The clerk must not refuse to file a paper solely because it is not in the form prescribed by these

5

rules or by a local rule or practice."). Thus, the court construes the date Alfaro filed his complaint as March 30, 2009, the date he first mailed his complaint to the court. Accordingly, Alfaro's complaint was filed within six months of the final denial of his claim and is timely.

Alternatively, defendant seeks dismissal of Alfaro's FTCA claim for "failure to comply with North Carolina's pre-filing requirement Rule 9(j)." Mem. Supp. Mot. Dismiss at 14. Under the FTCA, the United States waives sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a). A prisoner "can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 150 (1963). Because the statute "requires the law of the place where the act or omission occurred to be applied," North Carolina substantive law controls Alfaro's claim. See, e.g., Cibula v. United States, 551 F.3d 316, 319 (4th Cir. 2009) (quotation omitted); 28 U.S.C. § 1346(b). In North Carolina, a plaintiff asserting negligence must prove the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, a causal relationship between the breach of duty and the plaintiff's alleged injuries, and certain actual injury or loss sustained by the plaintiff. Camalier v. Jeffries, 340 N.C. 699, 706 460 S.E.2d 133, 136 (1995); Blackwell v. Hatley, 688 S.E.2d 742, 746 (N.C. Ct. App. 2010). In addition, a plaintiff alleging medical malpractice must comply with North Carolina Rule of Civil Procedure 9(j).

North Carolina Rule of Civil Procedure 9(j) states:

Any complaint alleging medical malpractice by a health care provider as defined in [N.C. Gen. Stat. §] 90-21.11 in failing to comply with the applicable standard of care under [N.C. Gen. Stat. §] 90-21.12 shall be dismissed unless:

(1) The pleading specifically asserts that the medical care has been reviewed

6

      by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
      (2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
      (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. R. Civ. P. 9(j).

The North Carolina General Assembly enacted Rule 9(j) in 1995 "in part, to protect defendants from having to defend frivolous medical malpractice actions by ensuring that before a complaint for medical malpractice is filed, a competent medical professional has reviewed the conduct of the defendants and concluded that the conduct did not meet the applicable standard of care." Estate of Waters v. Jarman, 144 N.C. App. 98, 100, 547 S.E.2d 142, 144 (2001) (quotation omitted); see Thigpen v. Ngo, 355 N.C. 198, 203–04, 558 S.E.2d 162, 166 (2002). Failure to comply with Rule 9(j) is ground for dismissal of a state medical-malpractice claim filed in federal court. See, e.g., Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676–77 (W.D.N.C. 2004); Moore v. Pitt County Mem'l Hosp., 139 F. Supp. 2d 712, 713–14 (E.D.N.C. 2001).

The United States, through FMC-Butner, is a "health care provider" as defined in section 90-21.11. See N.C. Gen. Stat. § 90-21.11. Alfaro seeks to hold the United States liable for the alleged negligence of its employees or staff in rendering or failing to render appropriate medical services requiring special skills. See id.; N.C. Gen. Stat. § 90-21.12. In his amended complaint, Alfaro sets forth the treatment he argues that he should have received, and the purported injuries that he suffered by being denied such treatment. See Compl. at 10–13. As such, Alfaro's negligence

7

claim "sounds in malpractice, not ordinary negligence." Frazier, 308 F. Supp. 2d at 678; see, e.g., Duke Univ. v. St. Paul Fire & Marine Ins. Co., 96 N.C. App. 635, 640–41, 386 S.E.2d 762, 766 (1990). Thus, under North Carolina law, Alfaro must comply with Rule 9(j).

The North Carolina legislature did not create an exception for ignorance or good cause in enacting Rule 9(j). Additionally, the North Carolina legislature declined to provide discretion to the court if a litigant offers an excuse for his noncompliance. See N.C. R. Civ. P. 9(j). "Rule 9(j) unambiguously requires a trial court to dismiss a complaint if the complaint's allegations do not facially comply with the rule's heightened pleading requirements." Barringer v. Forsyth County Wake Forest Univ. Baptist Med. Ctr., 197 N.C. App. 238, 255, 677 S.E.2d 465, 477 (2009). Moreover, Alfaro's status as a prisoner does not excuse his failure to comply with Rule 9(j)'s pre-filing certification requirements. See, e.g., O'Neil v. Anderson, 372 F. App'x 400, 402 & n.1 (4th Cir. 2010) (per curiam) (unpublished); Hill v. United States, No. 5:08-CT-3070-D, 2010 WL 3075495, at *15 (E.D.N.C. Aug. 5, 2010) (collecting cases).

Rule 9(j) provides one narrow exception: a litigant is excused from Rule 9(j)'s pre-filing certification requirement if negligence may be established under the doctrine of res ipsa loquitur. See N.C. R. Civ. P. 9(j)(3). This doctrine applies "only when the occurrence clearly speaks for itself." Diehl v. Koffer, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000) (emphasis removed) (quotation omitted); see, e.g., Tice v. Hall, 310 N.C. 589, 593, 313 S.E.2d 565, 567 (1984) (surgical sponge left in patient's body); Schaffner v. Cumberland County Hosp. Sys., Inc., 77 N.C. App. 689, 691–94, 336 S.E.2d 116, 118–19 (1985) (patient's hand burned during ear surgery); Hyder v. Weilbaecher, 54 N.C. App. 287, 292, 283 S.E.2d 426, 429 (1981) (stainless steel wire left in patient). Notably, "[w]hen treatment results in an injury to an area implicated in the surgical field, however, common knowledge does not support an inference of negligence in North Carolina." Wright v.

8

United States, 280 F. Supp. 2d 472, 481 (M.D.N.C. 2003) (citing Diehl, 140 N.C. App. at 380, 536 S.E.2d at 363 ("This Court does not believe that the proper standard of care . . . for gallbladder removal nor its attendant risks are within the common knowledge or experience of a jury.")). Thus, the court concludes that res ipsa loquitur does not apply to Alfaro's claim. Furthermore, the medical records that Alfaro attached to his amended complaint do not establish res ipsa loquitor or obviate the need for expert testimony. See, e.g., Frazier, 308 F. Supp. 2d at 677. Accordingly, because Alfaro failed to comply with Rule 9(j) or plead facts to fall within the res ipsa loquitur exception, the court grants the government's motion to dismiss Alfaro's FTCA claim.

III.

For the reasons stated, the court GRANTS defendant's motion to dismiss [D.E. 11].

SO ORDERED. This _8_ day of February 2011.

JAMES C. DEVER III
United States District Judge